04cv18810b-ord(AL-Cert).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES E. JERKINS,** | : | |
| | : | Case No. 1:04-CV-18810 |
| Plaintiff, | : | |
| | : | JUDGE O'MALLEY |
| v. | : | |
| | : | CERTIFICATION |
| **LINCOLN ELECTRIC CO., et al.,** | : | TO THE |
| | : | SUPREME COURT |
| Defendants | : | OF ALABAMA |

CERTIFICATION FROM

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO,

FEDERAL MULTI-DISTRICT LITIGATION NO. 1535,

TO THE SUPREME COURT OF ALABAMA,

PURSUANT TO RULE 18 OF THE ALABAMA RULES

OF APPELLATE PROCEDURE

**To the Supreme Court of Alabama
and the Honorable Justices Thereof:**

The Undersigned presides over a Multi-District Litigation known as *In re Welding Fumes Prods. Liab. Litig.*, MDL No. 1535, which involves over 1,800 consolidated cases. It appears to this MDL Court that the above-captioned matter, as well as dozens of other, similar cases pending in the MDL, involve questions or propositions of law of the State of Alabama which may be determinative of the cause, and there appears to be no clear, controlling precedent in the decisions of the Supreme Court of Alabama.

Accordingly, this MDL Court, situated in the United States District Court for the Northern District of Ohio, respectfully certifies the following questions of law of the State of Alabama to the Supreme Court of Alabama for instructions concerning such questions of law, based on the facts recited here.

**I.     Style of the Case.**

The style of the case in which certification is made is: CHARLES E. JERKINS, Plaintiff, versus LINCOLN ELECTRIC COMPANY, ET AL., Defendants, No. 1:04-CV-18810, United States District Court for the Northern District of Ohio.

**II.    Statement of the Facts.**

**A.     General Background.**

On June 23, 2003, the United States Judicial Panel on Multi-District Litigation ("MDL Panel") conferred multi-district status on all "*Welding Fume*" lawsuits filed in federal court, concluding that these cases "share factual questions concerning, *inter alia*, whether exposure to welding fumes causes the conditions complained of by plaintiffs and whether defendants knew or should have known of any health risks associated with exposure to welding fumes."[1]  There are currently about 1,800 individual cases pending in the *Welding Fume* MDL, and at least several dozen of them are governed by Alabama law.

As a general matter, the plaintiffs in the *Welding Fume* cases all allege that: (1) they inhaled fumes given off by welding rods; (2) these fumes contained manganese; and (3) this manganese caused them to suffer permanent neurological injury and other harm.  The *Welding Fume* plaintiffs name as defendants various manufacturers, suppliers, and distributors of welding rod products, and claim the defendants knew or should have known that the use of welding rods would cause these damages.  The plaintiffs generally bring claims sounding in strict product liability, negligence, fraud, and conspiracy.  The gravamen of the complaints is that the defendants "failed to warn" the plaintiffs

---

[1] *In re Welding Rod Prods. Liab. Litig.*, 269 F.Supp.2d 1365, 1367 (J.P.M.L. 2003).

3

of the health hazards posed by inhaling welding fumes containing manganese and, in fact, conspired to affirmatively conceal these hazards from those engaged in the welding process.

### B. The *Jerkins* Case.

This MDL Court has presided over trials of several "bellwether cases." The instant case, *Jerkins v. Lincoln Electric Co.,* was slated for a bellwether trial in July of 2010. Jerkins named as defendants, among others, four welding rod manufacturers: (1) The Lincoln Electric Company; (2) Hobart Brothers Company; (3) The ESAB Group, Inc.; and (4) Sandvik, Inc. The Court refers below to these manufacturers collectively as the "Principal Defendants."[2]

The claims Jerkins asserted against the Principal Defendants that remained for trial were: (1) Alabama Extended Manufacturer's Liability Doctrine; (2) negligent failure to warn; (3) wanton failure to warn; and (4) sale of unreasonably dangerous product. Jerkins sought both compensatory and punitive damages.

Before trial, the Principal Defendants filed a motion for summary judgment, arguing that all of Jerkins' claims were barred by the applicable Alabama statutes of limitations. The parties agreed that many relevant facts were not in dispute, including these:

• Jerkins began welding in 1979.

• Jerkins' exposure to welding fumes was essentially continuous from 1979 through about

---

[2] The Principal Defendants are all represented by the same counsel and filed a single motion for summary judgment, which raised the issues discussed in this Certification. Jerkins also named as defendants several other welding rod manufacturers, but those defendants either were dismissed before trial or did not join in the Principal Defendants' motion for summary judgment. Accordingly, those other defendants are not relevant to this Certification and will have no role in any briefing requested by the Alabama Supreme Court.

2008.

- Jerkins filed suit on April 21, 2004.

There remains a dispute of fact regarding precisely when Jerkins first began to experience symptoms of his alleged neurological injury (and, thus, when the relevant welding fume exposures – that is, those that allegedly caused his injury – occurred). There is some evidence that Jerkins suffered tremor and seizures as early as 2000, and other evidence that these symptoms did not appear until as late as 2003.[3] When this Court examined the pretrial record in a light most favorable to Jerkins (as it must when ruling on a motion for summary judgment), the Court concluded that a reasonable jury could find Jerkins' symptoms did not manifest until sometime within the two-year period that preceded the date he filed his lawsuit – and, thus, that a reasonable jury could find at least some of the allegedly injury-producing exposures occurred within the limitations period.

Having reached this conclusion, however, this Court was still faced with several issues related to application of the Alabama statutes of limitations. First, the Principal Defendants argued Jerkins was allowed to recover damages attributable only to the exposures he suffered during a two-year limitations period (beginning on April 21, 2002); Jerkins argued he was allowed to recover damages attributable to *all* of his welding fume exposures, going back to when he started welding in 1979. Second, Jerkins further argued that, even if the Principal Defendants were correct that his damages were limited to exposures he suffered during the limitations period, the applicable period was six years, not two. And finally, even if the Principal Defendants were correct that Jerkins' damages were limited to exposures he suffered during the limitations period, the parties disagreed

---

[3] The parties' medical experts appear to agree that, once a patient's symptoms due to exposure to manganese in welding fumes are evident, some degree of brain injury must have occurred.

5

over whose burden it was to prove what portion of the damages occurred inside the limitations period.

As explained further below, the parties' arguments in *Jerkins* regarding these issues revealed there is no clear, controlling precedent in the decisions of the Supreme Court of Alabama. Thus, this MDL Court was unable to rule with certainty on: (1) certain aspects of the Principal Defendants' motion for summary judgment; (2) several evidentiary issues related to damages; and (3) whether certain jury instructions were appropriate. Moreover, it was clear that the issues raised by the *Jerkins* parties were relevant to other cases pending in the *Welding Fume* MDL. Accordingly, this Court postponed the trial of *Jerkins* and now seeks assistance and direction from the Supreme Court of Alabama.

**III.     Applicable Alabama Law.**

   **A.     Period of Time for which Damages are Available.**

Since 1985, Alabama law has provided that "all actions for any injury to the person or rights of another . . . must be brought within two years." Ala. Code §6-2-38(l). This was the statute of limitations in force when Jerkins filed his lawsuit on April 21, 2004. Further, the then-applicable Alabama law regarding when the limitations period began to run was as follows: "For purposes of an action based on continuous exposure to a hazardous substance, the date of the injury is the day on which the plaintiff was **last exposed** to the hazardous substance causing the injuries." *Becton v. Rhone-Poulenc, Inc.*, 706 So.2d 1134, 1135 (Ala. 1997) (emphasis added). *See also Hubbard v. Liberty Mut. Ins. Co.*, 599 So.2d 20, 21 n2 (Ala. 1992) ("it seems to be settled in Alabama that the 'date of injury,' which starts the running of the statutory period of limitations in a continuous exposure case, occurs when the plaintiff was **last exposed** to the chemical or condition causing his injuries") (emphasis added).[4] The date of Jerkins' last exposure to welding fumes was in 2008 – *after* he filed his lawsuit in 2004 – so it is clear he asserted his claims within the two-year limitations period.

In certain Alabama cases involving intermittent toxic exposures – not continuous exposures, as occurred in *Jerkins* – courts have ruled that damages are available to the plaintiff only for those

---

[4] The Alabama Supreme Court subsequently abandoned the "date of last exposure rule," which was applicable when Jerkins filed his lawsuit, and instead adopted in 2008 a "discovery rule," holding that "a cause of action accrues only when there has occurred a manifest, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008). The discovery rule adopted in *Griffin* applied only going forward. *Id.* ("the new accrual rule of toxic-substance-exposure cases will be applied prospectively").

The vast majority of the *Welding Fume* cases pending in this MDL where Alabama law applies (like *Jerkins*), were filed before *Griffin* was issued.

7

exposures that occurred during the limitations period. For example, in *American Mutual Liability Insurance Co. v. Phillips*, 491 So.2d 904 (Ala. 1986), the plaintiff asserted her exposure to cotton fibers during a ten-year period, from 1972-1982, caused her to develop lung disease. The Alabama Supreme Court held that, under the one-year limitations period that applied, the plaintiff could recover damages attributable only to exposures that occurred within the year preceding her filing of the action in 1983. As it turned out, the plaintiff had been exposed to cotton fibers for only one day during that entire year. Thus, the Court found, the jury could consider only that one day of exposure in rendering its verdict.

If the rule set out in *Phillips* applies strictly in *Jerkins*, it appears Jerkins may recover only for damages attributable to his exposures from April 21, 2002 forward. Other Alabama cases, however, suggest the *Phillips* rule might not apply. *See, e.g., Hillis v. Rentokil, Inc.*, 596 So.2d 888, 890 (Ala. 1992) (holding that, where the plaintiff was exposed continuously to a toxin, the "'date of injury' for statute of limitations purposes is 'the day on which the plaintiff was last exposed to the damages,'" and making no suggestion that the amount of damages were limited to those attributable to exposures during the limitations period); *Continental Cas. Ins. Co. v. McDonald*, 567 So.2d 1208, 1216-17 (Ala. 1990) ("[I]t might well be that earlier conduct, not necessarily actionable as outrage initially, could be brought within a later-filed action as part of an ongoing pattern or scheme, at least where the earlier injuries or damages are not discrete or severable from the later ones, as is the case here. In sum, this action was not barred by the statute of limitations, because CNA's conduct, if it was tortious at all, was in the nature of a continuing tort, and that conduct was continuing even up to the time the action was filed.").

In sum, having examined the law of the State of Alabama that applies in *Jerkins*, it appears

unclear to this Court whether Jerkins may recover damages attributable only to his exposures during the limitations period, or instead to all of his exposures, dating back to when he began welding in 1979.

### B. Length of Limitations Period.

A related issue arises in connection with Jerkins' claim for wantonness. On March 5, 2004, only one month before Jerkins initiated his *Welding Fume* MDL case, the Alabama Supreme Court decided *McKenzie v. Killian*, 887 So.2d 861 (Ala. 2004). *McKenzie* overruled a long line of cases and held that "the six-year statutory period of limitations is applicable" to wantonness claims, instead of the two-year period. *Id.* at 870.

As noted, Jerkins did state a wantonness claim against the Principal Defendants. Accordingly, Jerkins argues that – assuming the Principal Defendants are correct that he is entitled to recover damages only for welding fume exposures that occurred during the limitations period – the appropriate period is six years and not two (at least for his wantonness claim). This raises the question of to which cases the rule announced in *McKenzie* applies – and more particularly, whether it applies to *Jerkins*.

There is support under Alabama law for the proposition that the *McKenzie* rule applies to all cases filed after *McKenzie* was decided. *See Foremost Ins. Co. v. Parham*, 693 So.2d 409, 421 (Ala. 1997) ("Because this return to the reasonable reliance standard represents a fundamental change in the law of fraud, we think it appropriate to make the new standard applicable in all fraud cases *filed* after the date of this decision") (emphasis in original). If so, the *McKenzie* rule would apply in *Jerkins* (because Jerkins filed his case after *McKenzie* was decided), so the six-year limitations

period would apply to Jerkins' wantonness claim.

There is also support under Alabama law, however, for the proposition that the *McKenzie* rule applies only to cases where the claim accrued no earlier than two years before *McKenzie* was decided. *See Cline v. Ashland, Inc.*, 970 So. 2d 755, 776 (Ala. 2007) (Harwood, J., dissenting; dissenting opinion later adopted by the majority in *Griffin v. Unocal Corp.*, 990 So.2d 291 (Ala. 2008)) ("only those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within two years of the opinion adopting the new rule would be entitled to have the accrual of their cause of action determined according to the new rule"). If this is how *McKenzie* applies, then the limitations period applicable to Jerkins' wantonness claim would be two years and not six.[5]

Thus, it is unclear to this Court whether the limitations period governing Jerkins' wantonness claim is six years or two.

### C. Burden of Proof.

Assuming the Principal Defendants are correct that Alabama law allows Jerkins to recover damages attributable only to the welding fume exposures he suffered during the limitations period (regardless of whether that period is two or six years), there remains a question of upon whom the burden rests to prove the appropriate allocation of damages. Jerkins argues that, while it is his

---

[5] Actually, if this is how *McKenzie* applies, *and* if a jury determines that Jerkins' claim accrued before April 21, 2002, then the limitations period applicable to his wantonness claim would be two years and not six. The Court cannot instruct the *Jerkins* jury properly, however, without an answer to the certified question; and the answer to the certified question will very likely fully resolve summary judgment motions in other MDL cases governed by Alabama law where there is no jury question regarding when the plaintiff's claim accrued.

affirmative burden to prove his *total* damages, it is the Principal Defendants' burden to prove whether any portion of that total is attributable to exposures that occurred outside of the limitations period. In contrast, the Principal Defendants argue it is Jerkins's affirmative burden to prove which damages are attributable to exposures that occurred inside of the limitations period, because those are the only damages he may recover.

There is Alabama law to support both positions. *See Tobiassen v. Sawyer*, 904 So.2d 258, 262 (Ala. 2004) ("the defendant seeking a judgment of dismissal based on the affirmative defense of limitations has the burden of proof"); Restatement (Second) Torts §§433A & 433B (when a party "seeks to limit his liability on the ground that the harm is capable of apportionment," then "the burden of proof as to the apportionment is upon each such actor"); *cf. Cloud v. Olin Corp.*, 552 F. Supp. 528, 534 n.14 (N.D. Ala. 1982) ("The burden will be on plaintiff, at the trial, to establish such reasonable separation [of damages that fall within the limitations period].").

In sum, it appears unclear to this Court whether the burden falls on the plaintiff or the defendant to prove whether damages occurred within or outside the applicable limitations period.

**III.   Questions Certified to the Supreme Court of Alabama.**

In light of the discussion above, the undersigned now certifies the following questions to the Supreme Court of Alabama.

1. In a case where the plaintiff seeks damages caused by long-term, continuous exposure to an allegedly toxic substance, does the law of Alabama applicable before *Griffin v. Unocal Corp.*, 990 So.2d 291 (Ala. 2008), limit the plaintiff to recovery of damages attributable only to exposures that occurred within the limitations period?

2. Does the six-year statute of limitations for wantonness claims adopted by the Alabama Supreme Court in *McKenzie v. Killian*, 887 So. 2d 861 (Ala. 2004) apply: (1) prospectively to claims that were filed after *McKenzie* was decided; (2) retroactively to claims that accrued no earlier than two years before *McKenzie* was decided; or (3) in some other fashion?

3. If the answer to question 1 is "yes," does the law of Alabama impose the burden upon the plaintiff or upon the defendant to prove the amount of damages, if any, attributable to exposures that occurred within the applicable limitations period, versus the amount of damages, if any, that are attributable to exposures that occurred outside of the applicable limitations period?

**IV.   Conclusion.**

The phrasing employed in the above certified questions is intended as a guide and is not meant to restrict the Alabama Supreme Court's consideration of the issues in its analysis of the record certified in this case. This extends to the Supreme Court's restatement of the issues and the manner in which the answers are given.

The Clerk of this Court is **DIRECTED** to transmit this Certificate, as well as the relevant

pleadings and briefs filed with this Court,[6] to the Supreme Court of Alabama, and to transmit copies of the Certificate to the attorneys for the parties.

**QUESTIONS CERTIFIED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: August 6, 2010

---

[6] This Court does not send the entire trial record to the Alabama Supreme Court because the vast majority of the record is not relevant to the questions certified. Of course, if the Alabama Supreme Court so requests, the Clerk of Court shall transmit any and all additional parts of the trial record.

At this juncture, the Clerk of Court is directed to transmit the following *Jerkins* docket entries: (a) the second amended complaint, docket no. **21**; (b) the Principal Defendants' answer, docket no. **34**; and (c) the briefs filed by the parties addressing the Principal Defendants' Motion for Summary Judgment Based on the Alabama Statute of Limitations, docket nos. **238, 262, 287, 309, & 334.** In addition, the Clerk of Court is directed to transmit the transcripts from the final pretrial hearing at which the relevant motion for summary judgment was argued, docket nos. **385 & 386**.