04cv18810c1-ord(few.rulings).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CHARLES E. JERKINS,** : | |
| : | **Case No. 1:04-CV-18810** |
| **Plaintiff,** : | |
| : | **JUDGE O'MALLEY** |
| v. : | |
| : | **MEMORANDUM AND ORDER** |
| **LINCOLN ELECTRIC CO., et al.,** : | |
| : | |
| **Defendants** : | |

Trial of the above-captioned matter was postponed pending receipt of a response from the Alabama Supreme Court to certain certified questions. Before this postponement, plaintiffs had filed an omnibus motion in limine to exclude various types of evidence at trial (docket no. 307).

The Court did not rule on these motions before postponement of trial. The parties have explained to the Court, however, that rulings on certain matters raised in these motions will be helpful even though trial has been delayed, because the Court's rulings will carry implications for other *Welding Fume* cases, and not just the *Jerkins* case. Specifically, the parties jointly asked the Court to rule on issues 7 and 11 raised in the omnibus motion because the same issues are likely to arise in other *Welding Fume* cases.

The Court agreed to address these issues and its rulings follow.

**Omnibus Motion Issue 7 – Motion to Exclude Any Reference to the Rejection of Manuscripts Authored by Dr. Nausieda – DENIED.**

Dr. Paul Nausieda is Jerkins' neurologist expert witness, and he also serves as an expert for other *Welding Fume* plaintiffs. Defendants have adduced evidence showing that Dr. Nausieda has authored three articles about Manganese Induced Parkinsonism ("MIP"), and he has gotten five rejection slips from journals.[1] With this motion, Jerkins asks the Court to: (1) exclude this evidence altogether because it is irrelevant; or (2) at the least, require defendants to show specifically which journals rejected which articles, and whether the rejecting editors included defendants' own experts.

Defendants respond the evidence is clearly relevant to whether Dr. Nausieda's theories have been generally accepted by the scientific community, which goes to credibility. The Court agrees. Whether the opinions of an expert have been accepted by a peer-reviewed journal is appropriate fodder for cross-examination at trial. *McClellan v. I-Flow Corp.*, 710 F.Supp.2d 1092, 1115-16 (D. Or. 2010). Defendants also argue it is not their job to show precisely which articles were rejected by which journals, and whether their own experts had any say in the rejections; rather, Jerkins can make this evidence clear on direct or redirect examination, if he wishes. For the most part, the Court again agrees. So long as defense counsel has a good-faith factual basis to ask questions on cross-examination, and does not misrepresent the record, counsel may do so. *See Oostendorp v. Khanna*, 937 F.2d 1177, 1181 (7th Cir. 1991) ("Cross-examiners must have a good faith basis for their questions, but do not have an affirmative duty to introduce the factual predicate for impeachment.") (citation omitted).

Given the history of this MDL, however, the Court further concludes that, to ensure the jury

---

[1] Defendants seem to suggest Dr. Nausieda wrote three articles, submitted each one to five journals, and got 15 rejections, but this is apparently not correct.

receives a full and fair presentation of relevant evidence, defendants must disclose to plaintiffs whether any of their retained experts (consulting or testifying) were on the review committees or editorial boards of the journals that rejected Dr. Nausieda's manuscripts.

**Omnibus Motion Issue 11 – Motion to Exclude Any Reference to the Number of Welders Dr. Nausieda has Diagnosed With Manganism – GRANTED.**

During closing argument in the MDL bellwether trial of *Cooley v. Lincoln Elec. Co.*, defendants made statements during closing argument regarding the number of welders that Dr. Nausieda has diagnosed with MIP. Specifically, defendants asserted Dr. Nausieda "has diagnosed more cases [of MIP] than anybody in the world . . . he's diagnosed 1,200 cases." *Cooley* trial tr. at 3380 (Oct. 2, 2009). Plaintiffs assert that, given other types of similar evidence and statements this Court has excluded, the Court should prohibit defendants from repeating these statements again at any *Welding Fume* trial.

Plaintiffs' assertion is well-taken. The Court has previously granted (with very limited exceptions) defendants' motion to exclude evidence of thousands of other lawsuits wherein welders claim that exposure to welding fumes caused them to suffer MIP. *See Evidentiary Order*, master docket no. 2217, at 5-10. The Court has also previously granted defendants' motion to exclude evidence of the frequency with which their own expert, Dr. Anthony Lang, concluded that a plaintiff's neurological condition was *not* caused by welding fume exposure, but was instead psychogenic, a rare condition. *Id.* at 49-50. The Court's bases for these rulings were that: (1) evidence of diagnoses in other welders' cases will "make for several trials within-a-trial," *id.* at 50; (2) the evidence carries "limited relevance [and] possibly prejudicial effect," *id.* at 7; and (3) "[g]iven the complicated issues in [*Welding Fume*] cases," and the multi-week length of their trials,

3

exclusion was appropriate "as a matter of prudent trial management," *id.* at 6-7 (citing Fed. R. Evid. 403 and 611(a)(2)).

Exactly the same concerns apply to evidence regarding the number of cases where Dr. Nausieda diagnosed welders with MIP. Accordingly, plaintiff's motion to exclude this evidence – and to preclude counsel from alluding to it at trial – is granted.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: July 5, 2011