04cv18810e-ord(Socra).wpd

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES E. JERKINS,** | : | |
| | : | **Case No. 1:04-CV-18810** |
| **Plaintiff,** | : | |
| | : | **JUDGE O'MALLEY** |
| **v.** | : | |
| | : | **MEMORANDUM AND ORDER** |
| **LINCOLN ELECTRIC CO., et al.,** | : | |
| | : | |
| **Defendants** | : | |

Earlier, the clerk of court entered default against defendant Socra Corporation. The Court then held a default judgment hearing and indicated it found plaintiff's motion for default judgment well-taken. The Court now memorializes that ruling, and also rules on various related motions. Specifically:

- plaintiff's supplemental motion for default judgment against Socra Corporation (docket no. 272) is **GRANTED**.[1] The Court hereby **ORDERS** entry of default judgment against Socra on the question of liability. The Court will later schedule a hearing to determine damages, pursuant to Fed. R. Civ. P. 55(b)(2)(B).

- Socra's motions for leave to enter a limited appearance to file various briefs in opposition to default judgment (docket nos. 360, 380, 389, & 399), or to file a motion for summary judgment (docket no. 408), are all **DENIED**.

## I.      History of Socra's Appearances in this MDL.

When the plaintiffs in this MDL first began filing complaints, they named many dozens of defendants, including large and small businesses across the nation that manufacture and distribute welding rods. From the beginning, defendant Socra Corporation was one of the named defendants.

---

[1] Accordingly, plaintiff's original motion for default judgment against defendant Socra Corporation (docket no. 122) is also **GRANTED**.

The reason many of the MDL plaintiffs sued Socra – which is "Arcos" spelled backwards – is Socra's relationship to Arcos Corporation and other related entities.  This relationship is as follows:

| | |
|---|---|
| 1920 (about) | **Arcos Corporation** is formed.  Among other things, Arcos Corporation manufactures and markets "Arcos"-branded welding rods. |
| 1981 | Arcos Corporation merges into **Hoskins Manufacturing Company**.  Hoskins maintains an "Arcos Alloys" division, which manufactures and markets "Arcos"-branded welding rods. |
| Mar. 2000 | **Arcos Alloys Corporation** is formed, as a wholly-owned subsidiary of Hoskins Manufacturing Company.  Arcos Alloys Corporation is a "spin-off" of what was formerly Hoskins' Arcos Alloys division; again, Arcos Alloys Corporation manufactures and markets "Arcos"-branded welding rods. |
| Nov. 2001 | **Arcos Industries LLC** is formed.  One month later, it purchases the assets of Arcos Alloys Corporation.  Arcos Industries manufactures and markets "Arcos"-branded welding rods. |
| Oct. 2002 | Arcos Alloys Corporation changes its name to **Socra Corporation**. |

As of today, then, "Arcos"-branded welding rods are apparently manufactured and marketed only by Arcos Industries, and not Socra, Arcos Alloys Corporation, or Hoskins Manufacturing Company.[2]

The Court refers below to the companies listed above in bold as "Arcos-related entities." Many of the welder-plaintiffs believe that, during their careers, they used "Arcos"-branded welding rods manufactured by one or more of the Arcos-related entities.  Accordingly, many of the MDL cases have complaints naming as one of the defendants "Socra Corporation, as successor to Arcos Alloys Corporation."[3]

---

[2]  That is, the above time-line suggests that Socra (f/k/a Arcos Alloys Corporation) is apparently an empty shell, and Arcos Industries is entirely separate from Hoskins Manufacturing.

[3]  The complaints also often name as defendants Hoskins Manufacturing Company, Arcos Alloys Corporation, and Arcos Industries LLC.

In some of these MDL cases, Socra filed a formal answer after being served with the complaint.  *See, e.g., Cooley v. Lincoln Electric Co.*, case no. 05-CV-17734, docket no. 14 (Socra's answer in the sixth MDL bellwether trial); *see also* MDL master docket no. 1609 (Socra's answer to the first amended complaint filed in 51 separate cases, e.g. *Riley v. Airgas Gulf States*, case no. 05-CV-17848.  In these cases, the plaintiffs regularly listed Socra's address as "1 Arcos Drive, Mount Carmel, PA, 17851."  *See, e.g., Cooley* docket no. 1 (listing that address for Socra in the complaint at 5 & ¶25 at 9); *Riley* docket no. 1, exh. 2 ( (listing that address for Socra in the amended complaint ¶2.cc at 6).

In other MDL cases, Socra waived service of summons and filed an answer.  *See, e.g.*, master docket no. 1691 (Socra's stipulation of waiver of service of summons in about 140 separate cases; *Luiting v. Lincoln Electric Co.*, case no. 05-CV-18008, at docket no. 8 (Socra's answer in one of these 140 cases).

And in still other cases, Socra did not respond in any way to the complaint.  *See, e.g., Todd v. Lincoln Electric Co.*, case no. 09-WF-17074, docket at 2 (plaintiff's service of summons upon Socra and other defendants; no responsive pleading or motion filed by Socra).


**II.**     **Socra's Appearance in this Case, and in *Jowers*.**

The instant case falls into the last category described above – Socra did not file an answer or otherwise respond in any way to the complaint.  This is true even though the complaint in this case was sent to the same address as were the complaints in the other cases cited above, where Socra did file a formal answer – that is, "1 Arcos Drive, Mount Carmel, PA, 17851."

Similar circumstances also occurred in the MDL case known as *Jowers v. Lincoln Electric*

*Co.*, case no. 07-WF-17010.  That is, in *Jowers*, Socra did not file an answer even though the complaint was sent via certified mail and signed for at the Mount Carmel, Pennsylvania address. Before examining the pending default-related motions in this case, the Court recapitulates what occurred in *Jowers*.

As described in *Jowers v. Lincoln Electric Co.*, 2008 WL 80063 (N.D. Miss. Jan. 4, 2008), MDL plaintiff Robert Jowers filed a third amended complaint against six defendants, including: (1) "Arcos Industries, L.L.C., f/k/a Arcos Alloys Corporation ('Arcos') d/b/a Hoskins Manufacturing Company; and (2) "Socra Corporation, as Successor to Arcos Alloys Corporation."  *Id.* at *1. Jowers served his complaint upon both Arcos Industries and Socra via certified mail, sending the complaint and summons to both defendants at the same address mentioned above:  "1 Arcos Drive, Mount Carmel, PA, 17851."  *Id.* at 2.  The Socra summons "was delivered to Judy Landi, who signed for the package.  Ms. Landi apparently gave the contents of the package to Arcos Industries, LLC, and the package was eventually forwarded by Arcos Industries to counsel for Socra."  *Id.*

Socra moved to dismiss Jowers' complaint for insufficient service of process, and the Court granted the motion.  The Court observed that, under applicable state law, "process may be served on the president or other head of the corporation, upon the cashier, secretary, treasurer, clerk, or [registered] agent of the corporation, or upon any one of the directors of such corporation;" in contrast, service "upon a corporation's receptionists, personal secretaries, and other low-level employees, however, is usually not sufficient."  *Id.* at *3 (citations to Mississippi cases and statutes omitted).  The Court further observed that "[t]he burden is upon Jowers to obtain proper service and, when contested, to prove service was valid."  *Id.* at 4.  Jowers did not shoulder his burden, as he "offer[ed] no proof regarding the relationship of Ms. Landi to Socra."  *Id.* at 3.  Further, even though

Socra "may share an address and a distant relationship with defendant Arcos Industries, neither Arcos Industries nor its officers or agents are, without more, officers or agents of Socra." *Id.* Because Jowers did not carry his burden of proving service of process, the Court granted Socra's motion to dismiss.

While some of the circumstances in *Jowers* are similar to those in this case, other critical circumstances are different.  In this case, plaintiff Jerkins served his complaint upon Socra via certified mail to the Mount Carmel, Pennsylvania address.  Ms. Rosemary Oley signed for the package.  These circumstances are generally similar to those in *Jowers*.

What makes this case different from *Jowers*, however, is that: (1) Socra did not file a motion to dismiss based on failure of service of process (nor any other document responsive to the complaint); (2) Jerkins pursued substantial discovery addressed to Socra's relationships with other Arcos-related entities; and (3) Jerkins filed a motion for default, which the Court granted as unopposed, and then a motion for default judgment, which was also unopposed.  To borrow a sports metaphor, the parties may be playing the same game of civil procedure in this case as they did in *Jowers*, but both their offensive and defensive positions are completely different.

Turning to the details in the instant case, Jerkins filed a motion for default judgment against Socra (docket no. 122) on April 7, 2010.[4]  Because Socra had "failed to plead or otherwise defend," the clerk of court properly entered default against Socra on April 16, 2010, pursuant to Fed. R. Civ.

---

[4] At the time Jerkins filed his motion for default, Socra had not responded to the original complaint, the first amended complaint, or the second amended complaint.

5

P. 55(a).[5]  Three days later, the Court gave notice it would hold a default judgment hearing on May 24, 2010, *see* docket no. 159.

Having learned from what occurred in *Jowers*, where the Court found plaintiff had not carried his burden of showing proper service of process, counsel for Jerkins immediately began to pursue discovery regarding the relationships between all of the Arcos-related entities.  This discovery included: (1) deposition of Rosemary Oley, who signed for the summons and complaint and who is Human Resources Manager for Arcos Industries, LLC; (2) deposition of Kenneth Freed, who was the 30(b)(6) representative of Arcos Industries, LLC, and was also the general manager of Socra; (3) deposition of Mark Sturing, who stated he was "acting General Counsel" of Socra; and (4) written interrogatory responses from Socra.

At the last minute, due to a family emergency, the Court had to cancel the default judgment hearing scheduled for May 24, 2010.  Notably, however, as of that date, Socra had not sought to oppose the motion for default judgment.  For example, Socra had not: (1)  moved to set aside entry of default; (2) sought leave to enter a limited appearance at the hearing to oppose entry of default judgment; (3) moved for leave to file a late responsive pleading; or (4) moved for leave to file a motion to dismiss for lack of service of process.  Rather, on April 13, 2010, Socra simply wrote a letter to the Court and opposing counsel referring to the *Jowers* opinion and concluding that, "[b]ecause Socra has not been served in the *Jerkins* matter, it has no obligation to expend resources

---

[5]  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).

to participate in that litigation[,] including any default hearing."[6]

On May 26, 2010, two days after the cancelled hearing, Jerkins filed a supplemental motion for default judgment.  This motion referred to all of the above-listed discovery and placed into the record the evidence and arguments Jerkins was prepared to offer at the hearing.  The essence of this supplemental motion may be boiled down as follows:

1.  On August 9, 2004, Arcos Industries Human Resources Manager Rosemary Oley signed for two certified envelopes containing the complaint and process – one sent to Arcos Industries and one sent to Socra.  Ms. Oley signed for Socra letters routinely over the years, and was never instructed not to sign for letters directed to Socra.  Indeed, Ms. Oley signed for the complaint and summons in *Cooley*, in which Socra filed an answer.  *See Cooley* docket no. 5 at 70-72.

2.  Arcos Industries General Manager Ken Freed testified in deposition that: (1) Ms. Oley was authorized to sign for Socra packages; (2) standing instructions were for Ms. Oley to forward certified letters to Arcos Industries' employee Dallas Miller, who in turn forwarded Socra-related letters to Socra's General counsel, Mark Sturing; and (3) this process was put in place by Jim Musser, who was Executive Vice President of Socra.

In other words, Jerkins offered evidence that Socra (VP Jim Musser) authorized and instructed an Arcos Industries executive (HR Mgr. Rosemary Oley) to accept service on behalf of Socra, and to

---

[6] Supplemental motion for default judgment (docket no. 272), exh. I at 2 (letter from Mark Sturing to Rick Davis).

Counsel for Socra *did* appear in Court on May 24, 2010, only to find out (as did counsel for Jerkins) that the default judgment hearing was canceled.  It is unclear whether counsel for Socra intended merely to observe the hearing (as the Court's clerk states was then represented by Socra's counsel) or intended to seek leave to make a limited appearance and be heard (as Socra's counsel represents in its post-hearing briefs).

forward service (via Arcos employees Dallas Miller and GM Ken Freed) to Socra's General Counsel (Mark Sturing), who would then forward service on to Socra's insurance companies.[7]

It was only after Jerkins filed his supplemental motion for default judgment, which revealed his hand was much stronger than Jowers' had been, that Socra filed any document in this case. Specifically, on June 4, 2010, the Court rescheduled the default judgment hearing for July 7, 2010; and on July 1, 2010, Socra filed a motion for leave to enter a limited appearance to file a "brief in opposition to plaintiff's supplemental motion for default judgment and alternatively motion to dismiss for insufficient service of process and lack of personal jurisdiction" (docket no. 360).  As the Court observed at the default judgment hearing, Socra's motion was "phenomenally untimely," coming well after the originally-scheduled hearing and only days before the re-scheduled hearing; accordingly, the motion for leave to file the brief in opposition was denied.[8]

Even though the Court denied Socra's motion for leave to file its brief in opposition, the Court still allowed counsel for Socra to offer argument at the default judgment hearing, and also still

---

[7]  The supplemental motion for default judgment also set out in detail the relationship between all of the Arcos-related entities, which information had not been developed in *Jowers*. Compare *Jowers*, 2008 WL 80063 at *2 ("There is no evidence of record regarding any 'Arcos'-related entity before March 8, 2000.") with supplemental motion for default judgment (*Jerkins* docket no. 272) at 2-3 & 9-10 (setting out the complete history of Arcos-related entities and the aspects (including personnel) that these entities share).

[8]  *See* default judgment hearing tr. at 62 (July 7, 2010) ("That brief [in opposition to default judgment] was phenomenally untimely by any stretch of the imagination.  The . . . motion [for default judgment] had been pending for a substantial period of time.  The original hearing date would have come and gone but-for the Court's emergency.  And even after that, [Socra] waited another additional 30 days or more before even filing anything on the docket.  Given the untimeliness of that brief, the Court will not accept the filing and concludes that that filing should be stricken.").

Ultimately, then, this Order simply memorializes the Court's earlier oral ruling denying Socra's motion for leave to file a brief in opposition to default judgment (docket no. 360).

required Jerkins to "explain . . . why you think service was sufficient, because whether or not Socra objects to service, you have an obligation to establish that service, in fact, occurred before I can enter default judgment."[9] Accordingly, Jerkins offered argument regarding why the facts supported a conclusion that he had obtained proper service of process,[10] and Socra argued why the facts showed otherwise.  The principal thrust of Socra's argument was that Rosemary Oley was simply not authorized to accept service of process on behalf of Socra.[11]  Following argument, the Court found that, contrary to Socra's position, substantial evidence supported the conclusion that Ms. Oley had actual authority to accept service of process on behalf of Socra.  Thus, the Court ruled that Jerkins had obtained service of process and that his motion for default judgment was well-taken.

## III.    Events Following the Default Judgment Hearing.

At the default judgment hearing, the Court delivered an oral ruling and promised a written

---

[9]  Default judgment hearing tr. at 63 (July 7, 2010).

[10]  *Id.* at 63-64 & 73-76.

[11]  *Id.* at 64-73.

opinion to follow.  This is that written opinion.[12]

The Court will not spend much time here reiterating the basis for its conclusion that Jerkins did obtain proper service of process.  The ultimate question presented to the Court at the default judgment hearing was one of fact – when Rosemary Oley signed for the summons and complaint sent to Socra, did Jerkins succeed in serving Socra?  Socra insisted Ms. Oley was not authorized to receive service for Socra, but the evidence showed otherwise.  This included evidence that: (1) Socra actually authorized Ms. Oley to accept service of process on its behalf; (2) Ms. Oley repeatedly acted in a way consistent with having received this authorization (e.g., signing for complaints and arranging for them to be forwarded to Socra's general counsel); and (3) Socra repeatedly acted in a way consistent with having given her this authorization (e.g., filing an answer in *Cooley* after Ms. Oley signed for the complaint).  The evidence identified by Socra (both at the hearing and in post-hearing briefs) did not outweigh Jerkins' evidence.  In sum, unlike the plaintiff in *Jowers*, Jerkins

---

[12] Again, this Order simply memorializes the Court's earlier determination, announced from the bench, that Jerkins's motion for default judgment was well-taken.  The Court ruled orally as follows:

> [U]ltimately in this case the plaintiff has made a substantial showing that Ms. Oley was authorized to accept service of process; that Socra specifically intended that Arcos Industries' personnel would accept not just mailings but service of process on their behalf; and that there w[ere] instructions as to how those things would be forwarded.
>
> And the Court finds that there is no factual showing that would rebut the case that plaintiffs put together to establish the existence of proper service of process in this case.
>
> So the Court finds that service was proper; that there are no other objections to entry of default judgment that have been registered; and the Court, therefore, will enter default judgment as to liability against Socra in this matter.
>
> Ultimately, a hearing will have to occur as it relates to damages, but in the interim, the Court will issue an opinion with respect to the question of service of process.

*Id.* at 76-77.

This Order is the promised "written opinion to follow."

10

carried his burden of showing he obtained proper service of process upon Socra.

After the Court's oral ruling, Socra filed various documents seeking to undo both the default and the default judgment.  As explained below in Section IV of this memorandum, these documents and related briefing reflect some confusion regarding whether default judgment was formally entered.  The post-hearing documents filed by Socra include: (1) motion for leave to enter a limited appearance to file motion to set aside default judgment instanter (docket no. 380); (2) motion for leave to enter a limited appearance to file reply in support of motion to set aside default judgment pursuant to Civ. R. 55(c) instanter (docket no. 389); and (3) supplemental motion to set aside default and/or default judgment pursuant to civil rule 55(c) (docket no. 399).  Socra also sought leave to file a motion for summary judgment instanter (docket no. 408).   The Court concludes none of these motions is well-taken on the merits.


**IV.     Current Procedural Posture.**

Before addressing Socra's post-hearing motions, the Court must clarify the current procedural posture of this case, which the parties did not focus upon until later in the post-hearing briefing.  Socra's first post-hearing motion (docket no. 380) asked the Court: (1) to set aside *default*, pursuant to Fed. R. Civ. P. 55(c); and also (2) for relief from *default judgment*, pursuant to Fed. R. Civ. P. 60(b).  It was not until Socra's last post-hearing motion that it argued there was, in fact, no *default judgment* from which it could seek relief – that is, although the Court indicated at the hearing it believed the motion for default judgment was well-taken, the Court never actually entered any judgment "set out in a separate document," as required by Fed. R. Civ. P. 58.

This recent argument is well-taken.  Although both Socra and Jerkins, in their earlier post-

11

hearing briefs, argued whether relief from *default judgment* was appropriate, these arguments were technically premature because it is this document, and not the Court's oral ruling at the default judgment hearing, that serves as the formal judgment. Still, given the Court's conclusion below that Socra's motion to set aside default is not well-taken, the Court construes Socra's other arguments regarding relief from default judgment as arguments why default judgment should not now be entered.

## V.     Post-Hearing Motions.

### A.     Timeliness.

As an initial matter, none of Socra's post-hearing motions are timely. As noted earlier, shortly before the default judgment hearing, Socra sought leave to enter a limited appearance to file a brief in opposition to plaintiff's supplemental motion for default judgment. The Court denied the request for leave because the brief was extremely untimely – Socra did not seek to file this brief until over a month after the hearing was originally scheduled, over a month after Jerkins filed his supplemental motion, and nearly three months after Jerkins filed his initial motion.

Socra now seeks leave to enter a limited appearance to file other motions and briefs opposing default judgment. Obviously, these briefs are even more untimely. The Court would be entirely justified in denying leave and striking the documents that Socra seeks to file "instanter."

There is little doubt, however, that Socra would then simply reassert many of the same arguments in post-judgment briefs. Accordingly, the Court simply addresses all of the arguments Socra raises in all of its post-hearing briefs.

**B.      Motion to Set Aside Default.**

**1.      Rule 55(c).**

Socra asks the Court to set aside its original entry of default, pursuant to Fed. R. Civ. P. 55(c).  Rule 55(c) states that "[t]he court may set aside an entry of default for good cause."  When determining whether a defendant has shown good cause for setting aside default, the Court must consider three equitable factors: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced."  *Burrell v. Henderson*, 434 F.3d 826, 831-832 (6th Cir. 2006); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  The Court considers these same factors when addressing a motion to set aside default *judgment*, but "the standards for granting relief differ."  *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).  "When asked to set aside an entry of default, a court considers the first factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief."  *Id.*

Addressing these factors in reverse order, the Court first easily concludes that Jerkins would suffer prejudice if default is set aside.  The Court entered default only a few months before the Court held its final pretrial conference.  By then, of course, the parties had not only engaged in years' worth of discovery of fact and expert witnesses, they had also filed pretrial motions in limine, *Daubert* motions, witness lists, exhibit lists, and so on.  A multi-week trial was imminent (the Court later postponed the trial after the parties agreed certain legal questions should be certified to the Alabama Supreme Court; those questions have now been answered).  There is no question that setting aside default and re-opening the case to include Socra would cause serious delay and prejudice to the plaintiff.

13

Regarding the question of whether Socra has a meritorious defense, Socra simply reiterates its assertion that service was not proper because Ms. Oley was not actually authorized to receive service on Socra's behalf.  Socra also insists Jerkins relied in part on hearsay evidence to suggest otherwise at the default judgment hearing.  For the reasons already stated, the Court does not agree that Socra's service-of-process defense is meritorious.  The evidence recited by Socra in its briefs, besides being presented only after the default judgment hearing was concluded, simply does not alter the Court's factual or legal conclusions.  Even if the Court discounts the evidence Socra insists is inadmissible hearsay (a single statement made by Mr. Freed regarding instructions Jim Musser gave to forward summonses and complaints), and even if the Court weighs the additional evidence Socra adduces (e.g., other statements made by Ms. Oley and Mr. Freed), the Court concludes the entire sum of all the evidence still preponderates in favor of the conclusion that Jerkins obtained proper service upon Socra.  It is worth repeating the highlights of this evidence: (1) Socra actually authorized Ms. Oley to accept service of process on its behalf; (2) Ms. Oley repeatedly acted in a way consistent with having received this authorization; and (3) Socra repeatedly acted in a way consistent with having given her this authorization.

Finally, the first and most important equitable factor – Socra's culpability – by itself outweighs all other considerations and militates against setting aside default.  The simple fact is that Socra very intentionally *chose* to default and then rely on its service-of-process arguments.  This Court almost always grants motions to set aside default when there is a fair inference the default was not purposeful or strategic, and the delay was not egregious.  For example, the Court will normally set aside default so long as the defaulting party: (1) so moves *before* the Court holds a default judgment hearing; and (2) gives almost any reasonable excuse as to why there was not timely filed

14

a response to the complaint, such as counsel having been only recently retained, or the defaulting party did not understand the import of receiving a complaint.[13]

In this case, however, Socra did not move to set aside default until nearly three months after default was entered, over a month after the default judgment hearing was originally scheduled, and after Jerkins filed his supplemental motion reciting the evidence he would have presented at this hearing.  As noted earlier, Socra's motion to set aside default was extremely untimely.  Moreover, Socra's failure to file a timely response to the complaint was its own strategic choice – not a result of late retention of counsel, late receipt of documents by counsel, or some other delay.  To the contrary, Socra received prompt, actual knowledge of the complaint, as evidenced by its written consent to removal of the case to federal court less than one month after the case was filed.[14]  After agreeing to removal, Socra then *chose* a strategy of defaulting, rather than, for example, moving to dismiss for failure of service of process, as it had in *Jowers*.  Further, Socra knowingly pursued this strategy consistently and without hesitation for years – until only a few days before the re-scheduled default judgment hearing, after Jerkins' motion revealed facts establishing that Arcos Industries' personnel did have authority to accept service on Socra's behalf.  Socra cannot assert that, simply because its strategy finally yielded an unhappy result, there is now "good cause" to set aside default and it should not be responsible for its own, chosen conduct.

In sum, none of the three equitable factors weigh in favor of setting aside default, and the

---

[13] *See, e.g., Cooley*, case no. 05-CV-17734, docket no. 13 (Socra's unopposed motion to file a late answer, noting that its "delay in answering is excusable in that defense counsel has only been recently retained to represent Socra in this action, after the time in which Socra's Answer to Plaintiffs' Complaint was due;" the Court granted this motion).

[14] *See* supplemental motion for default (docket no. 272), exh. V (letter from Mark Sturing on behalf of Socra to counsel for co-defendants, dated May 18, 2004).

third factor, alone, weighs very strongly against it. Accordingly, the Court will not set aside its entry of default against Socra.

### 2. Amended Complaints.

In addition to its Rule 55(c) equity arguments, Socra asserts an alternative, procedural basis for setting aside default. Socra notes that Jerkins has amended his complaint several times in this case, and Socra argues these amendments justify setting aside default and not imposing default judgment. Specifically, Socra identifies the following critical dates:

Apr. 21, 2004 – Jerkins files original complaint in Mississippi state court.

May 11, 2004 – Jerkins files first amended complaint, also in state court.

May 14, 2004 – Defendants remove case to federal court.

July 26, 2004 – Jerkins obtains summons for Socra from federal court.

Aug. 9, 2004 – Ms. Oley signs for summons delivered via certified mail.

Nov. 21, 2009 – Jerkins files second amended complaint, in federal court.

Apr. 16, 2010 – Court enters default against Socra.

May 24, 2010 – Original default judgment hearing (cancelled).

July 7, 2010 – Re-scheduled default judgment hearing.

July 9, 2010 – Jerkins seeks leave to file third amended complaint.

July 27, 2010 – Court grants Jerkins leave to file third amended complaint.

Aug. 5, 2010 – Jerkins files third amended complaint, in federal court.

Aug. 5, 2010 – Socra files answer to third amended complaint.[15]

Socra argues that: (1) the second and third amended complaint each superseded all prior complaints, rendering them a nullity; (2) Jerkins did not serve the second or third amended complaints on Socra via certified mail or any other mechanism; (3) default was entered for failure to respond to the summons connected to the *first amended complaint*, but this complaint became a nullity on Nov. 21, 2009 (when the second amended complaint was filed) and/or on Aug. 5, 2010 (when the third amended complaint was filed), so the default should also be a nullity; and (4) Socra did timely respond to the third amended complaint (even though it was also not properly served), so default and default judgment are both inappropriate.

The fatal weakness in this argument is that, once Jerkins obtained proper service of process on Aug. 9, 2004, Socra became obligated to adhere to all Court Orders. The Case Management Order applicable to all MDL proceedings requires all parties to participate in the Electronic Case Filing ("ECF") system.[16] Socra has certainly been aware of this requirement from the beginning of the MDL, when it was first made a party to MDL cases, and Socra has actively participated in ECF in many other MDL cases.[17] Once Jerkins obtained proper service of process upon Socra, service

---

[15] That Socra filed its answer on the same day as the filing of the third amended complaint suggests it was waiting eagerly for the opportunity to file a responsive pleading.

[16] *See First Case Management Order* (master docket no. 63) at 4 ("The Court has ordered this matter onto the Electronic Case Filing System. * * * All parties are required to register for ECF participation. The parties are expected to follow the Northern District of Ohio's policies and procedures on Electronic Case Filing."); *see also Practice and Procedure Order* (master docket no. 7) ("The parties are notified that this case will be placed on the Court's Electronic Filing System (see the attached notice from the Clerk of Court regarding the Court's filing system).").

[17] *See, e.g., Jowers*, case no. 07-WF-17010, docket no. 148 (Socra used the ECF system to file a motion to dismiss, arguing the plaintiff had not obtained service of process of the original, first, second, or third amended complaints).

via ECF of all later documents was appropriate and adequate.  This includes service of Jerkin's second amended complaint, his motion for default judgment, and so on.  The Court's entry of default never became a "nullity" – indeed, Socra defaulted for failing to answer the original, first, and second amended complaints.  Further, the default judgment hearing, which took place before Jerkins filed his third amended complaint, never lost its vitality.  The Court granted Jerkins leave to file his third amended complaint "for the sole purpose of clarifying the entities for which Arcos Industries, LLC is the appropriate successor in interest."  Motion for leave (docket no. 379) at 2.  This filing in no way changed the procedural or substantive stance of Jerkin's motion for default judgment, nor any legal or factual basis upon which the Court relied at the default judgment hearing.  *See Unigene Laboratories, Inc. v. Apotex, Inc.*, 2010 WL 2730471 at *5 (S.D.N.Y. 2010) ("[n]umerous cases, however, have held that 'if an amended complaint does not change the scope or theory of a case, then the responsive pleading cannot add new theories either . . . .'") (citations omitted), *affirmed*, slip op. at 12 (Fed. Cir. Aug. 25, 2011).

In sum, Jerkins' filing of various amended complaints does not provide any procedural basis for setting aside default, nor does it counsel against entry of default judgment.

### C.       Motion to Set Aside Default Judgment.

As noted, after filing motions to set aside default *judgment*, Socra realized the Court had never entered any judgment "set out in a separate document," so it filed motions seeking to set aside *default*.  Thus, the motions to set aside default *judgment* were premature.  Nonetheless, in its analysis above, the Court has construed Socra's arguments as aimed at why the Court should not now enter default judgment against it.

18

The Court adds one observation regarding Socra's motions to "set aside" default judgment. The standard to set aside default is more lenient than the standard for setting aside default judgment. *Waifersong*, 976 F.2d at 292.  Having found no basis to set aside default, the Court also concludes Socra has not shown it would be inappropriate to enter default judgment.  Socra quotes Fed. R. Civ. P. 60(b) – "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake * * * or (6) any other reason justifying relief from the operation of the judgment" – and asserts it was "mistake and misunderstanding, not culpable conduct of the defendant, [that] led to the unwarranted default."[18]  The "mistake" that Socra identifies, however, is simply the Court's ultimate conclusion that service was proper.  For the reasons already stated, the Court does not believe it made any mistake that calls into question the conclusions it reached at the default judgment hearing, and the Court *does* conclude that Socra's conduct was culpable.

Now that the Court has actually entered default judgment, of course, Socra may file a motion to set aside that default judgment.  The Court suggests, however, that reiterating the very same arguments contained in the post-hearing briefs (which themselves were often reiterated in Socra's replies and supplemental motions) would not be productive.

Following trial of this matter against the other defendants, the Court will hold a hearing to determine the amount of damages against Socra.  Finally, given the Court's entry of default

---

[18]  Memo in support (docket no. 380) at 2 (ellipses as quoted by Socra).  Socra did not claim initially any of the other grounds for relief from judgment listed in Rule 60(b)(1) – "inadvertence, surprise, or excusable neglect" – nor any of the other grounds listed in Rule 60(b)(2-5).  Socra subsequently argued in passing, in the motion at docket no. 389, that the reason listed at Rule 60(b)(4) – "the judgment is void" – also justifies relief from judgment.  The basis for this additional argument, however, is exactly the same as Socra's other arguments (the judgment is void because service was never perfected).

judgment against Socra, Socra's motion for leave to file a summary judgment motion is denied.

     **IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley         
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: August 26, 2011

20